No. 6889.

30  585
114  822

ROBERT MONATT vs. E. T. PARKER, PUBLIC ADMINISTRATOR.

One who has made a donation *inter vivos* of immovable property to his concubine, can not, on the latter's death, recover the property, on the ground that the donation violated a prohibitory law, and was opposed to good morals.

APPEAL from the Fifth District Court, parish of Orleans.  *Rogers*, J.

*Edward Phillips* for plaintiff and appellant.

*W. O. Denègre* for defendant and appellee.

The opinion of the court was delivered by

MARR, J.  The plaintiff alleges in his petition that he purchased a mulattress slave named Mathilde in 1847, whom he emancipated in 1858; and that he lived in concubinage with her from the date of his purchase until her death, which occurred in April, 1877.

That on the third of May, 1870, he purchased a certain lot of ground for $1500, for which he paid.

That being about to make a voyage to Europe, and desiring to make provision for his concubine in the event of his death during his absence, he caused the title to this lot to be taken in her name by notarial act.

That he was absent in Europe about six months, and on his return he had buildings and improvements put on the property, which cost some $3000, all of which he paid; that he also paid the taxes on the property, collected the rents and gave receipts for them in his name; that Mathilde had no means; that he is the lawful owner of the property; and has been in possession since the purchase, in 1870.

That after the death of Mathilde he paid the expenses of her last illness, funeral expenses, and all the debts of the succession; that she had nothing, and her succession owed nothing; and that she left no ascendants, nor descendants, nor collateral relatives, nor legal heirs.

That Parker, public administrator, has been appointed administrator of her succession; and has taken possession of the property in question, as belonging to the succession, and has obtained an order of court requiring it to be inventoried as well.

That the notarial act of May 3, 1870, the conveyance of the property to Mathilde, is null and of no effect, and in violation of " positive prohibitory law;" and if the act can have any effect, it is only as a donation from petitioner to his concubine, which is prohibited by law, and is contrary to good morals and public policy.

The suit is brought to recover the property, and thirty dollars a month for rent during the time the administrator holds possession; and to have the act of May 3, 1870, so far as it purports to convey any right or title to Mathilde, decreed to be absolutely null and void and of no effect whatsoever.

The administrator excepted that the petition exhibits no cause of action against him; and plaintiff is appellant from the judgment maintaining that exception and dismissing the suit.

We think the reference to "good morals and public policy" comes with rather a bad grace from plaintiff, who prostituted his own slave, made her his concubine, and lived with her in that degraded relation for thirty years, in flagrant violation of "good morals, public policy," and common decency.

The law does, indeed, prohibit donations of immovables between those who have lived in concubinage; and of movables exceeding one tenth of the value of their estates, respectively: R. C. C. 1481; but such dispositions can not be attacked by the parties themselves. The heirs or the creditors of the donor may invoke the nullity of donations in fraud of the law and of their rights by alleging and proving his turpitude, which he would not have been permitted to do in his own behalf.

That which one promises to give for an illegal or immoral consid-

eration he can not be compelled to give; and that which he has given on such a consideration he can not recover. The law will not afford relief to either party, *in pari causâ turpitudinis;* but leaves them just where they have have placed themselves. See Mulhollan vs. Voorhies, 3 N. S. 46; Gravier vs. Carraby, 17 La. 118; Pucket vs. Clarke, 3 Rob. 82.

The Roman law did not permit that to be recovered which had been given for an illegal or immoral consideration; nor did it allow any action to enforce promises and undertakings made on such consideration. Such an action as that brought by plaintiff in this case would not have been tolerated under that system :

"*Si ob stuprum datum sit  *  *  *  quod meretrici datur, repeti non potest.*" Dig. lib. 12, tit. 5, l. 4. The rule and the reason for it are stated very clearly and forcibly by the Emperor Antoninus :

"*Cum te propter turpem causam, contra disciplinam temporum meorum, domum adversariæ dedisse profitearis: frustra eam tibi restitui desideras, cum in pari causâ possessoris conditio melior habeatur.*" Code, lib. 4, tit. 7, l. 2.

It may be questioned whether the concubine of her master who continues in that relation after her emancipation is *in pari causâ turpitudinis* with him. It is certain that he could not, during her lifetime, have maintained an action against her for the recovery of the property ; and her death has not invested him with any right which he had not during her life. All that plaintiff alleges-in his petition may be true; it must be assumed to be true for the purposes of this decision; but it only serves to show that he is attempting now to avoid the legitimate consequences of his own acts and conduct in violation of "good morals and public policy."

The exception was properly maintained, and the judgment appealed from is affirmed with costs.