### FRANK GARST v. LOVE & WORD.
(Filed September 4, 1896.)

UNLAWFUL OCCUPANCY OF PUBLIC LANDS—*Contract For Pasturage Upon, Void.* In a suit to recover compensation for the pasturage of cattle under a contract which is alleged by the plaintiffs to provide for the defendant's turning his cattle into the 175,000-acre pasture of the plaintiffs, to be kept and cared for, and held by the plaintiff therein, and which pasture, it is alleged, is enclosed by a post and wire fence, paragraphs of the answer which state that this enclosure is maintained upon government land, to which the plaintiffs have no right or title, and which it is alleged they are holding exclusive possession of, for rental and speculation, to the exclusion of the defendant and other persons, thereby requiring the defendant to pay for the use thereof, and that the plaintiffs' said pasture is an unlawful enclosure of public lands, in violation of the provisions of the act of congress of February 25, 1885, state a good defense, and it is error to sustain a demurrer thereto.

(Syllabus by the Court.)

*Error from the District Court of Woodward County; before Frank Dale, District Judge.*

*John H. Pitzer,* for plaintiff in error.

*Temple Houston, R. J. Ray* and *Keaton & Cotteral,* for defendant in error.

#### STATEMENT OF THE CASE.

The material parts of the record for consideration are the petition filed in the case on August 22, 1895, which is as follows:

"In District Court in and for County of Woodward, Territory of Oklahoma. J. E. Love and J. T. Word, doing business under the firm name of Love & Word, Plaintiffs, v. Frank Garst, Defendant.

PETITION.

"To the Hon. Frank Dale, Judge of said Court.

"Your petitioners, J. E. Love and J. T. Word, hereinafter styled plaintiffs, complaining of Frank Garst, hereinafter styled defendant, would respectfully represent unto your honor that all parties to this action, both plaintiffs and defendant, reside in the county of Woodward, Territory aforesaid. That at all times hereinafter mentioned, and now, plaintiffs were and are co-partners, doing business under the firm name and style of Love & Word, and such times were, and still are, engaged in the business of buying, selling, raising, pasturing and caring for cattle. That at the times herein mentioned plaintiffs possessed and controled, in the county and Territory aforesaid, a pasture enclosed by a post and wire fence, including 175,000 acres, more or less, constructed for the holding and maintaining of cattle. That heretofore, to-wit: on the 1st day of February, 1895, defendant made and entered into a certain oral contract with the plaintiffs, wherein it was mutually agreed by and between the parties plaintiff and the defendant, that the defendant should place and turn into the aforesaid pasture of plaintiffs 1,800 head of cattle, consisting of steers and stock cattle, and that for the keeping, care and holding of said cattle defendant should pay, and then and there agreed to pay, plaintiffs the sum of $180 per month, from time said cattle were so kept and cared for, until they were taken out of the pasture aforesaid.

"That upon, and in pursuance of, such oral contract, said cattle, in class and number aforesaid, were, on the said 1st day of February, 1895, delivered by the defend-

ant to the plaintiffs, and by them received and turned into said pasture, where said cattle remained until the 21st day of August, 1895.

"That during said time plaintiffs, in pursuance on their contract as aforesaid, kept, watched, cared for and grazed said catle in pasture aforesaid until said cattle were removed from the pasture of plaintiffs by defendant as aforesaid, on the 21st day of August, 1895.

"That on said date, as will appear from computation, there was due plaintiffs from defendant the sum of $1,415 for the pasturage, care, keeping and maintenance of said cattle. That the services were performed by the plaintiffs for the defendant at his express invitation and request, and were reasonably worth the amounts charged therefor, whereby defendant became liable, and promised to pay plaintiffs the said sum of money, according to the spirit and tenor of said oral contract. That said sum is now due, and, though often requested, defendant refuses to pay same or any part thereof, to plaintiffs' damage in the sum of $1,415.

"Wherefore, the premises considered, plaintiffs prays that upon final hearing hereof he have judgment for his debt and cost of suit, for which, as in duty bound, he will ever pray.

"HOUSTON & RAY, Attorneys for plaintiffs."

And the answer of the defendant to this petition, which is as follows:

"In the District Court of Woodward County, Oklahoma Territory, December Term, 1895.

"Love & Word, Plaintiffs, v. Frank Garst, Defendant.

#### ANSWER.

"Comes now defendant, Frank Garst, by his attorneys, Deane & Laune, and for answer to plaintiffs' petition,

"1. Denies each and every material allegation in their petition contained.

"2. For a second defense to plaintiffs' cause of action, defendant alleges that the pasture of plaintiffs of 170,000 acres, as stated in their petition, is an unlawful enclosure of government land, and that plaintiff's have attempted, by means of this unlawful enclosure, and by threats and intimidation, to extort money from defendants and others, and thus hold to their own exclusive use and benefit, for rental and speculation, a large area of government land, to which plaintiffs had no exclusive right of possession, title or color of title, and the inclosing of which was and is in strict violation of the act of congress of February 25, 1895, entitled 'An Act to Prevent Unlawful Occupancy of Public Lands.'

"3. That the suit brought by plaintiffs against defendant is, as stated in their petition, for pasturage of defendant's cattle, which were on government land, and within said plaintiffs' unlawful enclosure, and said plaintiffs' suit is unjust, unfounded and oppressive, by reason of the garnishment notices and attachments levies made against defendant.

"4. That by reason of the above mentioned process and proceedings plaintiffs sought to extort money from defendant under settlement or compromise, and so injure his commercial credit and standing, that he would be compelled to settle with plaintiffs.

"5. That by reason of the foregoing illegal and oppressive proceedings defendant has been put to great expense, inconvenience and loss of time and injury to property and commercial credit, and has been damaged in the sum of $1,000, for which, with costs of suit, he asks judgment.

"<i>Frank Garst.</i>

"By his attorneys, DEAN & LAUNE."

"Territory of Oklahoma, Woodward County.

"S. B. Laune, being duly sworn, deposes and says that he is one of the attorneys for defendant, that defendant

4—

is now absent from Woodward county; that affiant has read the foregoing answer, and knows the statements therein contained are true, as he verily believes.

"S. B. LAUNE.

"Subscribed and sworn to before me this 19th day of December, 1895.          "LOUIS E. PITTS, Clerk."

The plaintiffs demurred to the second, third, fourth and fifth paragraphs of the answer, on the ground that the facts therein stated are not sufficient to constitute a defense to the plaintiffs' cause of action. This demurrer was sustained to all the paragraphs of the answer demurred to, and, on trial before the court, judgment was rendered for the plaintiff for the sum of $1,100 and costs, and an attachment which was had in the cause sustained. Defendant filed his motion for a new trial, which was overruled, and he now brings the case here for review. Reversed.

Opinion of the court by

BIERER, J.: This action was brought to recover of the defendant below, Frank Garst, for the pasturing of defendant's cattle in the pasture of the plaintiffs, located in Woodward county, Oklahoma. This pasture, it was alleged by plaintiffs, was fenced with a post and wire fence, enclosing 175,000 acres, and that, by the agreement, the defendant was to place, and did place 1,800 head of cattle in this pasture, to be kept, held and cared for, for the sum of $180 per month until they should be taken out of the pasture. And it was claimed that the sum sued for was due under this contract.

The paragraphs of the answer which were demurred to, with the bluster and useless expressions omitted, substantially allege that this pasture mentioned in plaintiffs' petition, consisting of 170,000 acres, was upon government

land, to which the plaintiffs had no right or title, and upon which the plaintiffs were maintaining an unlawful enclosure, in violation of the act of congress of February 25, 1885; and that by means of this unlawful enclosure they were speculating upon government land, and attempting to hold the exclusive possession thereof, and to require this defendant, and others, to pay for the pasturage of cattle in such enclosure. And the only substantial question in the case is as to whether or not such allegations were sufficient to constitute a defense to the plaintiffs' claim for pasturage.

The question presented resolves itself into the plain and distinct proposition: Can a person or an association of persons fence in and enclose a large body of government land, by a post and wire fence, and exclude other persons therefrom, and make a contract with a person, who is so excluded, for the pasturage of cattle in such enclosure upon government land, and enforce in a court of law and equity the payment of money for such pasturage?

Section 1 of the act of congress of February 25, 1885, in the Supplement of the Revised Statutes, vol. 1, page 477, an act to prevent the unlawful occupancy of the public lands, provides:

"That all inclosures of any public lands in any state or territory of the United States, heretofore or hereafter to be made ,erected, or constructed by any person, party association, or corporation, to any of which land included within the inclosure the person, party, association, or corporation making or controlling the inclosure, had no claim or color of title made or acquired in good faith, or an asserted right thereto by or under claim, made in good faith with a view to entry thereof at the proper land office under the general laws of the United States at the time any such inclosure was or shall be made, are hereby

declared to be unlawful, and the maintenance, erection, construction, or control of any such inclosure is hereby forbidden and prohibited.

"And the assertion of a right to the exclusive use and occupancy of any part of the public lands of the United States, in any state or any of the territories of the United States, without claim, color of title, or asserted right as above specified as to inclosure, is likewise declared unlawful, and hereby prohibited."

Section 2 of the same act requires the district attorney for the proper district to institute civil suits in the United States courts of the district against parties violating this act, and requires such cases to have precedence over other cases on the civil docket, and that they be determined at the earliest practicable day, and that the proceedings shall be of a summary character.

Section 4 of the same act makes the violation of any of the provisions thereof, whether as owner, part-owner, agent, aider or abettor, a misdemeanor, and the violation subject to a fine not exceeding one thousand dollars, and imprisonment for not exceeding one year.

This act, in our judgment, was made for the express purpose of preventing just such enclosures of the public lands as the pleadings in the case allege the plaintiffs are maintaining. The public lands of the United States are held by the government for the purposes of settlement, sale, and occupancy by actual settlers thereon, each settler taking not more than one quarter-section thereof, and are not held for the purpose of being segregated by fencing the same into large pastures, and holding the same for the pasturage of stock, to the exclusion of other citizens. And this act sought to make provisions for the use of summary process in preventing these trespasses upon the public domain, and also 'to

make such conduct criminal, and punishable under the criminal laws of the United States.

Can, then, a person who is maintaining this breach both of the civil and criminal laws of the United States, come into a court of equity and ask that a contract that he has made with another for the use of such prohibited enclosure be enforced, and receive an affirmative answer? Our answer must be, directly and plainly, no. You are maintaining an enclosure which is prohibited by law, and a court of equity will not aid you in enforcing any contract which assists you in maintaining or deriving profit from this unlawful transaction.

It is insisted, however, in behalf of defendant in error, that it is only the maintaining the fence that is prohibited. That while that may be illegal, the pasturing of cattle on the government lands is not illegal, and as the legal part of the contract can be separated from the illegal, the legal part can be enforced. While there is a principle of law that where two independent and distinct considerations enter into a contract which is not illegal in itself, one of which considerations is legal and the other of which is illegal, and where the same can be distinctly and clearly separated, the contract will be enforced; yet the argument of defendants in error cannot be sustained, for this abstract principle is not applicable to the case at bar. Here the consideration for the payment of the price sought to be recovered was the pasturage of cattle in the enclosure of the plaintiffs. The contract contemplated the turning of the cattle into this enclosure, the feeding them there upon the grass grown by nature upon the government lands, and the keeping of the cattle within this enclosure, and, as is alleged in substance in the answer, the keeping of other cattle, for

which payment was not made, off of this part of the gov·
ernment domain, and out of this pasture. The use of the
enclosure, the use of the government land for grazing,
and the keeping of the cattle in that pasture were the
component parts of the consideration, and each and every
one was illegal, because the primary one, the mainten-
ance of the enclosure, and the consequent "unlawful oc-
cupancy of the public lands" was unlawful. It is true
that we know of no statute that makes it illegal for one
person to contract with another for the grazing of cattle
upon the public domain, but it is illegal to maintain an
enclosure and thus keep a pasture upon the public do-
main. And the pasturing of these cattle, in the manner
provided by the contract of the parties, so clearly con-
templated the use in this business of the unlawful en-
closure of the public lands, that, although the caring
for and the keeping of the cattle upon the public domain
might be lawful, these things, coupled with the agree-
ment that they be done in this unlawful enclosure,
makes the entire contract illegal and void, for the
legal cannot be separated from the illegal. This con-
clusion is amply supported by authority.

The case of *Widoe v. Webb*, 20 Ohio State, 431, was a suit
upon a promissory note, given in settlement of an ac-
count, part of the items of which were for intoxicating
liquors, sold by the payee of the note to the maker, to be
drunk upon the premises where sold, in violation of the
statute; the trial court instructed the jury:

"That, if any of the items for spirituous liquors thus
illegally sold entered into and formed part of the con-
sideration of the note, then the plaintiff could not re-
cover; the law being that when any part of the entire
consideration of a promise is illegal the whole contract
is void."

Concerning the question then before the court, the opinion states:

"The concurrent doctrine of the text books on the law of contracts is, that if one of two considerations of a promise be void merely, the other will support the promise; but that if one of two considerations be unlawful, the promise is void. When, however, for a legal consideration, a party undertakes to do one or more acts, and some of them are unlawful, the contract is good for so much as is lawful, and void for the residue. Whenever the unlawful part of the contract can be separated from the rest it will be rejected, and the remainder established. But this cannot be done when one of two or more considerations is unlawful, whether the promise be to do one lawful act, or two or more acts, part of which are unlawful; because the whole consideration is the basis of the whole promise. The parts are inseparable. (Metcalf on Contracts, 246; Addison on Contracts, 905; Chitty on Contracts, 730; I. Parsons on Contracts, 456; I Parsons on Notes and Bills, 217; Story on Promissory Notes, 190; Byles on Bills, 111; Chitty on Bills, 94.) Whilst a partial want or failure of consideration avoids a bill or note only *pro tanto*, illegality in respect to a part of the consideration avoids it in toto."

In the case of *McQuade v. Rosecrans*, 36 Ohio st. 442, the court used this language in approving the former decision:

"Where a part of the consideration, whether large or small, is affected with the fraud, the case falls within the operation of the principle stated and affirmed in *Widoe v. Webb*, 20 Ohio St. 431."

The case of *Meguire v. Corwine*, 101 U. S. 108, is a very interesting one to consider in connection with this question. There the suit was to recover upon a contract whereby the defendant's testator had agreed that in con-

sideration of the services of the plaintiff in procuring his, the testator's, appointment as special counsel in certain causes against the United States, and in aiding him in managing the defence of them, the testator agreed to pay plaintiff one-half of the fee he should receive from the government, and the supreme court, while recognizing the validity of an honest claim for attorney's services, but denying the right to recover for such services when they were connected with a contract to pay compensation for procuring the appoinment as counsel for the government, such contract being against public policy and void, by Mr. Justice Swayne, who wrote the opinion in the case then before the court, and quoted from his own language used in *Trist v. Child*, 21 Wallace, 441, said:

"But they are blended and confused with those which are forbidden; the whole is a unit, and indivisible. That which is bad destroys that which is good, and they perish together. * * Where the taint exists it affects fatally, in all its parts, the entire body of the contract. In all such cases *potior conditio defendentis.* Where there is turpitude, the law will help neither party."

The case of *Trist v. Child* was one brought by Child against Trist, and recovery had in the trial court, but reversed, and the cause dismissed by the supreme court, upon a claim for compensation for professional services in prosecuting a claim before congress as the agent and attorney for Trist. The supreme court recognized the validity of a contract for compensation for attorney's fees in such cases, but held that where the same was connected with services as lobbyist, the taint of the latter services affected the entire transaction, and made it all illegal, so that no compensation whatever could be recovered. That is exactly the situation here. While a con-

tract to keep and care for cattle on government land would not be illegal, where the same was done in a prohibited enclosure it would make the entire transaction illegal.

Another case in point is that of *Bixby v. Moore*, 51 New Hampshire, 402, where it is held that one cannot recover anything on a *quantum meruit* for an entire service, where a small part of his labor consists in selling liquor contrary to law.

On this question Lawson, in his work on contracts, says:

"If any part of a single consideration for one or more promises is illegal the whole agreement is void, for public policy will not permit a party to enforce a promise which he has obtained by an illegal act or an illegal promise, although he may have connected, with this act or promise another which is legal." (Sec. 340.)

Bishop on Contracts, sec. 471, uses this language:

"A contract illegal in part and legal as to the residue, is void as to all, when the two parts cannot be separated; when they can be, the good will stand and the rest fall. One entire consideration cannot, within this rule, be separated, though composed of distinct items, some of which are legal and others illegal."

Where a contract is based upon several considerations, one of which is illegal, the entire contract is void, whether the illegality be by common law or by statute. (Chitty on Contracts, page 730.)

The law says that the plaintiffs cannot maintain this unlawful enclosure. While maintaining it, as the pleadings allege they were doing, they were engaged in the keeping and pasturing of cattle in a manner prohibited by law, and so long as they are thus engaged they can recover no compensation for their labors.

The supreme court of Colorado held in *Hittson v. Brown*, 3 Col. 304, that an unlicensed attorney could not recover any compensation for his services, because they were rendered in violation of a statute expressly or impliedly prohibiting his practice of that profession.

In the recent and well considered case of *Yount v. Denning*, 35 Pac. 207, the supreme court of Kansas decided that a real estate agent who had failed to procure a license under a city ordinance requiring all real estate agents to pay a semi-annual license or occupation tax of $10, and which imposed a fine for the violation thereof, could not recover any compensation for making a sale of real estate, and a judgment in his favor for a commission of $265 was, for this reason, reversed.

It certainly could not be contended that a contract to pasture these cattle in this unlawful enclosure was not in furtherance of a violation of law, and did not tend to aid and promote, by a financial reward, such violation.

In *Dillon & Palmer v. Allen*, 46 Iowa 299, where it was decided that no recovery could be had for threshing grain where the work was done on a machine where the rods, knuckles, joints and jacks were not boxed as required by statute, that statute making it a misdemeanor and punishable by a fine for anyone to run a machine, or for anyone to permit his grain to be threshed by a machine not boxed in accordance with the statute, the law was stated thus, quoting from a former decision of the same court:

"The rule to be drawn from these cases, therefore, appears to be, that when an act is absolutely prohibited by statute, or is contrary to public policy, all notes, etc., given in furtherance of that act, are null and void."

And in the syllabus of the case it said:

"Contracts tending to promote, or requiring the performance of acts forbidden by statute are void, even though the statute does not so declare, but merely inflicts a penalty for its violation."

*Ingersoll v. Randall*, 14 Minn. 400, is cited as authority in this Iowa case.

In the case of *Bank of United States v. Owens*, 2 Peters, 527, it was held that not only were contracts in violation of law and public policy void, but that the rule was extended to such as are calculated to affect the general interests and policy of the country.

Now, while the contract in question may not be in direct violation of law and public policy, it does, if enforced, give to the plaintiffs a reward for their violation of this express statute of the United States, and furnishes the very remuneration that is so strong a temptation for its continued violation.

We must dispose of this question before us from a broad and comprehensive standpoint, rejecting technical distinctions, whose only merit would be to defeat the statute, and hold all acts within the implied, if not the express prohibition of the statute, which tend to aid its direct violation. Any other policy would be analyzing crime and distinguishing between illegalities in the unwitting aid of a continuing violation of the law.

The judgment must therefore be reversed, with directions to overrule the demurrer to the paragraphs stated of the defendant's answer, and to proceed with the cause in accordance with these views.

Dale, C. J., who presided in the court below, not sitting; all the other Justices concurring.