JOHN R. PLATT, Appellant, *v.* HANNAH ELIAS, Respondent, Impleaded with Others.

1. EVIDENCE — PRESUMPTION OF UNDUE INFLUENCE ARISING FROM MERETRICIOUS RELATIONS ONE OF FACT. The presumption that a woman living in meretricious relations with a man has by the exercise of undue influence obtained money from him is a presumption of fact not of law; it leaves the trial court at liberty to find undue influence from the

fact of such relation, but does not compel it to do so, especially in a case where the presumption is overcome by testimony,

2. IMMORAL CONSIDERATION NOT RECOVERABLE. Where illicit sexual intercourse is the consideration for the payment of money and the money has been paid the courts will not aid the donor to recover it.

*Platt* v. *Elias,* 108 App. Div. 365, affirmed.

(Argued October 19, 1906; decided November 20, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 21, 1905, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

The plaintiff brought this action against Hannah Elias and fourteen banks and trust companies to impress a trust upon moneys alleged to have been extorted from him by the defendant Elias, and to have been deposited by her with the other defendants. The complaint was verified on May 27, 1904. It charged that "between 1896 and the date hereof said defendant has blackmailed this plaintiff out of upwards of $685,385." It contained numerous specific allegations of obtaining money by means of threats and extortion. The substance of these allegations was that the plaintiff, already an old man, entered upon illicit relations with the defendant Elias, then a comparatively young woman, a negress and a courtesan, and that after their adulterous relations had existed for some years she began to extort money from him by threats of publicity and threats of personal assault and succeeded in thus obtaining from him the large sum already mentioned, the greater part of which was paid to her subsequently to the 1st day of January, 1896.

The defendant Elias interposed an answer denying all allegations of blackmail, extortion or threats and setting up the following affirmative defense: "That prior to and since the 1st day of January, 1896, this plaintiff has voluntarily cohabited with and maintained this defendant, and this defendant has been the mistress and friend of this plaintiff, and that this plaintiff, prior to and since the 1st day of Janu-

ary, 1896, voluntarily gave this defendant, as his mistress and friend, various sums of money, the exact amounts of which, and the dates upon which said sums were given by this plaintiff to this defendant, this defendant is unable to state. That all the moneys received by this defendant from this plaintiff were given voluntarily by this plaintiff to this defendant, as his mistress and friend."

The other defendants served answers which do not call for any consideration upon this appeal except to say that they sufficed to put the plaintiff to his proof.

Upon the trial at the close of the evidence on both sides the court rendered judgment in favor of the defendant directing a dismissal of the complaint, but not upon the merits, on the ground that the proof failed to sustain the claim of the plaintiff, who based his right to recover solely upon allegations of blackmail and extortion by means of threats of bodily harm and the exposure of his relations with the defendant Elias. The trial judge also held that relief could not be granted on the ground of undue influence, aa it had not been alleged, and consequently was not in issue. He made elaborate findings of fact which established the payment of money substantially as alleged by the plaintiff, but negatived every general or specific allegation of blackmail or extortion contained in the complaint, and he found as a conclusion of law that such sums of money as were mentioned in the complaint or as had been proven to have passed from the plaintiff to said defendant were not obtained by said defendant from the plaintiff by blackmail, threats or extortion.

This judgment at the Special Term was unanimously affirmed by the Appellate Division in an opinion which, among other things, contains the following: "It is undoubtedly true that the relations which are proven to have existed between the plaintiff and the defendant Elias were such as would give rise to a presumption that the large sums of money which the latter received from the former were acquired through undue influence, but that presumption is entirely overcome by the testimony of the plaintiff himself."

*Lyman E. Warren* and *Ira D. Warren* for appellant. Judgment should have been rendered for the plaintiff on the findings of the trial court, and on the undisputed evidence. (*Whalen* v. *Whalen*, 3 Cow. 537; *Eadie* v. *Simmons*, 26 N. Y. 12; *Matter of Will of Smith*, 95 N. Y. 522; *Brice* v. *Brice*, 5 Barb. 541; *Cowen* v. *Cornell*, 75 N. Y. 101; *Seers* v. *Shafer*, 6 N. Y. 268; *Clark* v. *Fisher*, 1 Paige, 176; *Bevans* v. *Jarnagan*, 5 Baxt. 282; *Cooke* v. *La Motte*, 15 Beav. 240; *Robinson* v. *Cox*, 9 Mod. 263.) The evidence in this case is amply sufficient to sustain a judgment on the ground that this money was obtained by the defendant Elias by fraud and extortion. (*Weller* v. *Weller*, 44 Hun, 172; *People* v. *Thomson*, 97 N. Y. 313; *People* v. *Wightman*, 104 N. Y. 598.) The complaint states a good cause of action in equity to have defendant Elias and the other defendants declared to be constructive trustees for the plaintiff. (*Haddon* v. *Lundy*, 59 N. Y. 326; *Zimmerman* v. *Kinkle*, 108 N. Y. 282; *Haddon* v. *Dundy*, 59 N. Y. 320; 2 Story's Eq. Juris. § 1255; Pom. Eq. Juris. § 1053; *N. Y. & B. F. Co.* v. *Moore*, 102 N. Y. 667; *Newton* v. *Porter*, 69 N. Y. 133; *National Bank* v. *Barry*, 125 Mass. 20; *Platt* v. *Platt*, 2 T. & C. 25; 58 N. Y. 646; 61 N. Y. 145.)

*Daniel Daly* for respondent. The rule requiring a recovery to be *secundum allegata* still prevails in this state. (*Wright* v. *Delafield*, 25 N. Y. 270; *Bank* v. *Eames*, 1 Keyes, 592; *Truesdell* v. *Sarles*, 104 N. Y. 167; *Day* v. *Town of New Lots*, 107 N. Y. 154; *Baird* v. *Mayor, etc.*, 96 N. Y. 603; *Dickinson* v. *Mayor, etc.*, 92 N. Y. 588; *Fisher* v. *Rankin*, 25 Abb. [N. C.] 194.) The essence of the charge in the complaint was the obtaining of money by means of threats, intimidation, coercion, force, violence and assault, and the fear thereby induced. Such a charge is vitally distinct from one of obtaining money by the subtle and comparatively pacific means known to the law as the exercise of "undue influence." (*C. A. Society* v. *Loveridye*, 70 N. Y. 394; *Rollwagen* v. *Rollwagen*, 63 N. Y. 520; *Matter*

*of Snelling,* 136 N. Y. 517; *Horn* v. *Pullman,* 72 N. Y. 277.) The evidence failed to establish the cause of action alleged. (*Krekeler* v. *Aulbach,* 16 N. Y. 374; *Marden* v. *Dorthy,* 160 N. Y. 45; *Hay* v. *Knauth,* 160 N. Y. 303; *Cronin* v. *Lord,* 161 N. Y. 95; *Hamilton* v. *N. Y. C. R. R. Co.,* 51 N. Y. 106.) The trial court properly refused to find that "the said sum of $684,829.25 was obtained of the plaintiff by the defendant Hannah Elias by undue influence exercised by her over the plaintiff." (*Hay* v. *Knauth,* 160 N. Y. 303; *Deland* v. *Richardson,* 4 Den. 95; *Marvin* v. *U. T. Ins. Co.,* 85 N. Y. 278; *Matter of Rand,* 28 Misc. Rep. 465; *Matter of Westerman,* 29 Misc. Rep. 409; *Matter of Mondorf,* 110 N. Y. 450.)

WILLARD BARTLETT, J. In view of the findings of fact made by the trial court and the unanimous affirmance by the Appellate Division, I am unable to perceive any ground which would justify us in interfering with this judgment. So far as the express allegations of the complaint are concerned, the learned judge at Special Term has found that the respondent did not commit any of the acts of blackmail or extortion which are charged therein. These findings being amply sufficient to sustain the conclusions of law and having been unanimously affirmed by the Appellate Division leave no question open for consideration in this court unless it be true, as is contended in behalf of the appellant, that notwithstanding the absence of any specific averment of undue influence in the complaint the trial court was bound to presume the existence and exercise of such influence by reason of the facts which were found as to the illicit sexual relations between the appellant and the respondent at the time of making the gifts which are the subject of attack in this suit. The learned counsel for the appellant invokes the doctrine which is nowhere better stated than by Mr. Justice Cooley in his well-known work on the Law of Torts in these words: " Where a transaction is brought about while the parties are living in illegal sexual relations it is always open to suspicion of fraud or

undue influence, and if it is a gift or a sale for an inadequate consideration, or if it is specially beneficial to one party rather than to the other, the party benefited by it will be under the necessity of showing that no advantage was taken and that it was the result of free volition." (2 Cooley on Torts [3d ed.], 982.)

The proposition presented for our sanction is that the rule thus laid down made it the duty of the judge at Special Term to find that the gifts from the appellant to the respondent were induced by the exercise of undue influence as soon as he was convinced that the donor was maintaining the donee as his mistress. This proposition necessarily rests upon the hypothesis that the presumption of undue influence arising out of illicit sexual cohabitation is a presumption of law rather than a presumption of fact. If this view as to the character of the presumption be correct, then proof which establishes the existence of the illicit relation would necessarily demand the inference that gifts made during the continuance of that relation were brought about by the exercise of undue influence; for a presumption of law is a rule which requires that a particular inference *must* be drawn from an ascertained state of facts. If, on the other hand, the presumption of undue influence in the case of a gift by a man to a woman with whom he has a meretricious connection is only a presumption of fact, it merely warrants the trial court in deducing the exercise of undue influence from the fact that the sexual relations between the parties were improper, but does not absolutely demand that such an inference shall be drawn from that fact. In other words, a presumption of fact leaves the trial court at liberty to infer certain conclusions from a certain set of circumstances, but does not compel it to do so.

An examination of the various cases relied upon to support the position of the appellant shows quite clearly, I think, that the presumption of undue influence in respect to gifts by a man to his mistress has generally been regarded by the courts as a presumption of fact. The case of *Dean* v. *Negley* (41 Pa. St. 312) was a feigned issue to determine the validity

of the will of one William Johnston.   The parties opposing
the will offered to prove upon the trial among other things
that Johnston both before and after the death of his wife
maintained a continuous adulterous intercourse with a Mrs.
Bolton who was the mother of the children to whom he
had devised the bulk of his estate.   It was held that
the trial court erred in refusing to receive proof of the
relation between the testator and Mrs. Bolton.   The opinion
of the Supreme Court was delivered by LOWRIE, C. J.,
who said : "There can be no doubt that a long-continued
relation of adulterous intercourse is a relation of great
mutual influence of each over the mind and person and
property of the other.   History abounds with proofs of it,
and it requires no very long life, or very close observation
of persons around us, in order to reveal the fact.  *  *  *
If, then, there was such a relation between the testator and
Mrs. Bolton at the time of making the will, as was offered to
be proved, we think that that fact, taken in connection with
the devise to Mrs. Bolton's daughters, is evidence of an undue
influence exerted by her over the testator, and affecting the
dispositions of his will, and that it may justify a verdict against
the validity of the will.   I have, myself, thought that it raised
a *presumption of law* of undue influence, but we do not so
decide, but leave it as a question of fact merely."   Here we
have a distinct refusal by the Supreme Court of Pennsylvania
to treat the presumption as one of law.   In other states where
it has been asserted that the exercise of unlawful influence
will be presumed in cases where the parties to a gift live in
adulterous or illicit relations in the absence of proof of a legal
consideration, I find nothing in the language of the courts
which conveys the idea that they regarded the presumption
as one which *must* be adopted, as would be the case if it
were deemed a presumption of law.   The import of the
decisions is merely that the jury or the chancellor, as the case
may be, will be justified in assuming the exercise of undue
influence under such circumstances so as to impose upon the
donee the burden of establishing a lawful consideration, but

that the rule which permits this to be done is not imperative
upon the trial court so as to constrain it to reach that conclu-
sion. (*Shipman* v. *Furniss,* 69 Ala. 555 ; *Leighton* v. *Orr,* 44
Ia. 679, and *Hanna* v. *Wilcox,* 53 Ia. 547.)   In the case last
cited an attack was made upon a conveyance executed by a
deceased grantor to a woman with whom he was living in
adulterous relations at the time when the deed was made.
" The exercise of unlawful influence," said the Supreme Court
of Iowa, " will be presumed where the parties to a deed live
in adulterous relations in the absence of proof of a lawful
consideration."   This remark must have been intended to
assert the rule stated as a presumption of fact rather than a
presumption of law, because the case was triable in the
Supreme Court *de novo* and the opinion was rendered at the
conclusion of the trial therein.

Irrespective of judicial authority in other states, however,
and even if a different view prevailed elsewhere, I think it is
carrying the rule of evidence applicable to such cases as that
before us far enough to hold that the presumption under con-
sideration is simply a presumption of fact which will sustain
a judgment based upon undue influence if the trial court
chooses to adopt it, but which the trial court is not constrained
to adopt.   I see no reason why the presumption here should
be any stronger than that which arises in a prosecution for
larceny by reason of the recent possession of stolen goods.
While the recent possession of stolen property by a person is
held to raise a presumption of guilt it is not one which neces-
sarily requires a conviction but is merely a fact for the con-
sideration of the jury under all the circumstances of the case.
(*People* v. *Weldon,* 111 N. Y. 569.)   In the case at bar the
Appellate Division recognized that the relations between
the appellant and the respondent had been proven to be such
as would have authorized a presumption of undue influence
by the trial judge if he had seen fit to make it ; but the
opinion goes on to declare that such presumption was entirely
overcome by the testimony of the plaintiff himself.   In other
words, the Appellate Division has held, correctly, as I think,

that the presumption was not absolute, and has further asserted, in the exercise of its power to deal exclusively with the facts, that the learned trial judge did right in rejecting it.

While it may seem unfortunate that the effect of the present judgment is to leave in the possession of the respondent a very large sum of money which she obtained from the appellant as his mistress, it is to be observed that the courts below have found in effect that the payments were wholly voluntary. If it be true that they were induced by the sexual intimacy between the parties a court of equity could not interfere at the instance of the donor to enable him to recover his money inasmuch as the gift has been fully executed and the consideration was plainly immoral. Where illicit sexual intercourse is the consideration for the payment of money and the money has been paid, the courts will not aid the donor to recover it back any more than they would enforce in behalf of a woman the unexecuted promise of a man to pay her money in consideration of such intercourse. (2 Schouler's Personal Property [3d ed.], § 61.) "That which one promises to give for an illegal or immoral consideration he cannot be compelled to give; and that which he has given on such a consideration he cannot recover. The law will not afford relief to either party, *in pari causa turpitudinis;* but leaves them just where they have placed themselves." (*Monatt* v. *Parker*, 30 La. Ann. 585.)

I find no error of law in this record; the determination of the courts below upon the question of fact is not reviewable here; and I, therefore, advise the affirmance of the judgment, with costs.

CULLEN, Ch. J., HAIGHT, VANN, WERNER and HISCOCK, JJ., concur; GRAY, J., absent.

Judgment affirmed.