## FAIRBANKS-MORSE CO. v. CITY OF GEARY.

No. 6158—Opinion Filed March 28, 1916.
Rehearing Denied May 23, 1916.
(157 Pac. 720.)

**1. Municipal Corporations—Indebtedness—Limitations—Purchase of Property.**

Sec. 26, art. 10, of the Constitution of this state provides that no county, town, city, township, school district, or other political corporation or subdivision of the state shall be allowed to become indebted in any manner, for any purpose, to an amount exceeding in any year the income and revenue provided for such year, without the assent of three-fifths of the voters thereof voting at an election to be held for that purpose, nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding 5 per cent. of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness, provided that any county, city, town, township, school district, or other political corporation or subdivision of the state incurring any indebtedness requiring the assent of the voters as aforesaid shall before or at the time of doing so provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to contribute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same.

**2. Same.**

Sec. 647, Comp. Laws 1909, provides that no real estate or personal property shall be bought or sold where the value of either said real or personal property contracted for at one purchase shall exceed $500 until the purchase or sale be authorized by a majority vote of the electors resident of the city or village.

**3. Same.**

The constitutional and these statutory inhibitions plainly say and mean that the limitations therein prescribed shall not be exceeded, neither directly nor indirectly. They were adopted for the protection of the people, and it is the duty of the courts and municipal officers to see that they are strictly enforced.

**4. Same—Invalid Contract—Enforcement—Recovery of Property.**

A debt which is in excess of the constitutional or statutory limit is void; and in no form can such debt be held valid upon any theory of quantum meruit, or equitable obligation. The absolute lack of power to contract such indebtedness bars every form of action and every legal device by which recovery is sought; nor will the courts aid the vendor to recover the property sold and delivered under such illegal contract.

(Syllabus by Robberts, C.)

Error from District Court, Blaine County; James R. Tolbert, Judge.

Action by the Fairbanks-Morse Company against the City of Geary. Judgment for defendant, and plaintiff brings error. Affirmed.

S. P. Forsee and Foose & Brown, for plaintiff in error.

C. F. Dyer, for defendant in error.

Opinion by ROBBERTS, C. It appears that during the month of March, 1911, the

plaintiff in error, who is engaged in the business of selling machinery, entered into a written contract with the defendant in error, wherein it purported to lease to the city of Geary certain machinery at a stipulated price to be paid on delivery and monthly installments thereafter; that the total value of the personal property included in the contract was about $2,400, and, pursuant to said contract, the plaintiff delivered to the defendant the property mentioned therein, and it was installed as a part of the city waterworks plant, whereupon the defendant paid $400 at the time of delivery and the freight charges thereon, and delivered to the plaintiff certain articles of personal property then owned by the city of Geary of the value of about $750, and thereafter defendant paid to the plaintiff $520 in monthly payments, making a total payment of about $1,670. It appears that the defendant refused to make any other or further payments on the contract, a perpetual injunction was granted restraining the municipal officers from making any further payments under said contract, and the plaintiff in this case, who was not a party to the injunction proceedings, instituted this action of replevin to recover the specific property mentioned in the alleged lease. The petition was in the usual form of complaint in actions in replevin, having attached thereto the contract.

The defendant answered by general denial and further alleges, in substance: (1) That no demand was made upon the defendant for the amount due on the contract, nor for a return of the property; (2) that no verified claim was ever filed with the city council for payment of the amount due on the contract, and the city was not in default of payment at the time the suit was commenced; (3) that the contract was and is ultra vires, and entered into in violation of the Constitution and laws of this state, and is contrary to public policy, in that the amount and value of the property sought to be purchased and involved herein was more than $500, and no election was called or held to vote to provide for, or approve said contract; (4) that the terms of the contract incurred an indebtedness greater than the current revenues of the city for the year in which it was executed, and no taxes had been levied, or other provision made, to meet the payments thereof; (5) that said contract is void because it creates an indebtedness in excess of 5 per cent. of the assessed valuation of the city of Geary, and that said city at the time of entering into said contract was already indebted in an amount greater than 5 per cent. of the assessed valuation of the said city, according to the general state and county assessment for the year prior to the making of the contract; (6) that plaintiff has received from defendant on said contract the sum of $1,072, and in addition thereto personal property of the value of $800, all of which it has retained and converted to its own use, which said sums aggregate the full value of the property received by defendant from plaintiff. The plaintiff replied by general denial.

The parties occupy the same positions they did below, and will be designated plaintiff and defendant herein. There is no serious conflict between the parties as to the facts. The record shows: (1) That the contract was dated March 24, 1911; (2) that the consideration to be paid by the city, including the personal property delivered to plaintiff, was about $2,400; (3) that at the time the contract was entered into the existing bonded indebtedness of the city of Geary was over $50,000, and the assessed valuation of all the taxable property in the city, as shown by assessment for state and county purposes, for the years 1910 and 1911, was $606,192, and for 1911 and 1912, $910,531; (4) that 5 per cent. of the first valuation would be $30,309.60, and the latter $45,526.55, both of which show that the city at the date of the contract was already indebted in an amount greater than 5 per cent. of the assessed valuation; (5) that the terms of the contract incurred an indebtedness greater than the current revenues of the city for the year in which it was executed, and no taxes had been levied or other provision made for the payment thereof; (6) that plaintiff has received about $1,700 in payments on said contract; (7) that no election was held to authorize or approve the contract; (8) that no verified claim was filed by plaintiff for payment of the balance due; (9) that no tender or offer to return to the city the money and property received on the contract; (10) that no demand was made by plaintiff for the property involved before this action was commenced; (11) that the contract, being introduced in evidence, contains the following:

"Terms of Rental.

"We propose to lease the above-described machinery to the city of Geary for the terms of twelve months, the terms of rental to be as follows: $400.00 upon delivery f. o. b. Geary, by draft on bill of lading; $104 00 on the first day of each month for twelve successive months, commencing on June 1, 1911, and as a further consideration for the use of above equipment: One 60x16 Horiz. tubular boiler with full flush front, stack, grates, and all fittings and fixtures; one tubular water heater; one 4½x3x4 boiler feed pump, brass fitted; one F. M. & Co. 9 and 14x7x12 OCP Duplex pressure pump, together with all pipe valves and fittings comprising the complete equipment in the city Steam pump Plant. All f. o. b. cars Geary, Okla., in first-class condition. On completion of the payment of these rentals and compliance with all the conditions herein named, the property herein men-

tioned shall become the property of the city of Geary; otherwise to remain the property of Fairbanks, Morse & Co. with the right to take possession and remove same."

Upon these facts the case was submitted to the court without a jury, and judgment rendered for the defendant.

Plaintiff brings error. For reversal the plaintiff makes the following assignments of error.

"First. The court erred in not finding for the plaintiff and not ordering the plaintiff to be placed into the possession of the property in question.

"Second. The trial court erred in ruling that the plaintiff did not have the legal right to recover.

"Third. The trial court erred in overruling the plaintiff's petition to remove the cause to the federal court.

"Fourth. The trial court erred in overruling the plaintiff's motion for a new trial.

"Fifth. The trial court erred in admitting incompetent, irrelevant, and inadmissible evidence on behalf of the defendants.

"Sixth. The trial court erred in excluding competent, relevant, and admissible evidence offered by the plaintiff."

We will first dispose of the third assignment:

That "the court erred in overruling the plaintiff's petition for removal to the federal court."

The fact that counsel cite no authorities, and submit no argument in support of this specification leads us to presume that he has abandoned it. We will say, however, that to our mind the record shows that the plaintiff did not bring itself within the rule for removal, and therefore the court committed no error in denying the petition.

The fifth and sixth assignments of error go to the admission and rejection of evidence, and counsel have made no satisfactory showing that plaintiff was prejudiced thereby, or that the court committed error in its rulings thereon.

The first, second and third assignments raise the legal questions in the case, and will be considered together.

Plaintiff first contends that the contract is valid under sec. 946, Comp. Laws 1909, which section is as follows:

"All incorporated towns, cities and municipal corporations in this state, are hereby authorized and empowered to purchase, erect, lease, rent, manage and maintain any system or part of system of waterworks, hydrants and supply of water, telegraphing, fire signals or fire apparatus that may be of use in the prevention and extinguishment of fires; and to pass all ordinances penal or otherwise that shall be necessary for the full protection, maintenance, management and control of the property so leased, purchased or erected. The common council or board of trustees of such city or municipal corporation are hereby * * * authorized to assess, levy, and collect taxes for the purposes aforesaid, and to do all acts necessary to carry such lease and contract of purchase, erection or maintenance into effect, and to pay the stipulated rent or contract price for the property so leased, purchased, erected or to be maintained, excepting, however, that any such lease or contracts for purchase, erection or maintenance which shall stipulate for an annual payment greater than an annual levy of five mills on each dollar of the assessed valuation of such city or municipal corporation shall not be authorized until the contract providing therefor shall first have been submitted to a vote of the people of such city or municipal corporation at any general or special election, * * * ratified by a majority of the voters of said city or municipal corporation voting at such election."

The theory of counsel seems to be that the first part of this section fully authorized the board to enter into the contract, and that the latter part providing for an election to authorize or validate the contract is not applicable here, because the consideration, or purchase price, was not "greater than an annual levy of five mills on each dollar of the assessed valuation of the city of Geary," as hereinbefore shown. This contention cannot be sustained for the reason that this section was passed in 1905 and was abrogated, or at least modified, so far as it relates to the contract or debt limitation of such municipal corporations, by sec. 26, art. 10, of the Constitution of this state, adopted in 1907, which is as follows:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness: Provided, that any county, city, town, township, school district, or other political corporation, or subdivision of the state, incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same."

The record shows that the contract involved comes within the inhibition of the latter part of this section of the Constitution, in that the consideration created a debt "in an amount, including existing indebtedness, in the aggregate exceeding 5 per cent. of the valuation of the taxable property of said city, ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness," and is therefore void.

It is claimed by defendant that the contract is void under sec. 647, Comp. Laws 1909, which provides:

"No real estate or personal property shall be bought or sold where the value of either said real or personal property contracted for at one purchase shall exceed five hundred dollars ($500.00) until the purchase or sale be authorized by a majority vote of the electors resident of the city or village."

But plaintiff contends that this section (647) was repealed by implication by section 946, supra, as the former was passed in 1899, and the latter in 1905, and that there is a conflict between the two sections. We cannot agree to this contention. By a careful reading of the two sections it will be seen that sec. 647 limits the purchasing power in such cities, under all circumstances, to $500, unless authorized by a majority of the electors, while sec. 946 fixes the limitation to "an annual levy not greater than five mills on the dollar. of the assessed valuation," which might be even less than $500; in other words, the latter might be a limitation within a limitation. From this view of the Constitution and the sections of the statute, as applied to the facts. we are forced to the conclusion that the contract was and is absolutely void. The rule laid down in sec. 2174 of Gray's Limitation of the Taxing Power is as follows:

"'A debt which is in excess of the constitutional limit is void; and in no form can such debt be held valid upon any theory of quantum meruit or equitable obligation. The absolute lack of power to contract the indebtedness bars every form of action and every legal device by which recovery is sought'—citing Litchfield v. Ballou. 114 U. S. 190. 5 Sup. Ct. 820, 29 L. Ed. 132: Hedges v. Dickson County. 150 U. S. 182. 14 Sup. Ct. 71. 37 L. Ed. 1044; Morton v. City of Nevada (C. C.) 41 Fed. 582: Brazoria County v. Youngstown Bridge Co., 80 Fed. 10. 25 C. C. A. 306; City Water Supply Co. v. City of Ottumwa (C. C.) 120 Fed 309; Swackhamer v. Hackettstown, 37 N. J. Law, 191; McGillivray v. Joint School District. 112 Wis. 354, 88 N. W. 310, 58 L. R. A. 100, 88 Am. St. Rep. 969."

These limitations upon powers of municipal officers to spend the people's money. and create burdens of indebtedness. and impose unconscionable and unprecedented taxation are wholesome restrictions presumably passed for the protection of a people who are already loaded down with an unreasonable, unjust. and unnecessary weight of taxation. The language of Commissioner Harrison in Haskins, etc., v. Oklahoma City, 36 Okla. 71, 126 Pac. 204, fully accords with the views of the writer hereof on that subject, and is as follows:

"A similar statute was enacted in 1895 (Laws 1895, c. 7) for the protection of counties, and as a limitation upon the powers of boards of county commissioners in levying taxes and incurring indebtedness. In Huddleston v. Board of County Com'rs of Noble County, 8 Okla. 614, 58 Pac. 749. and in Shannon v. State ex rel. Davidson, 33 Okla. 293, 125 Pac. 1106, and Kerr, County Clerk, v. State ex rel. Wimbish, County Atty.. 33 Okla. 110, 24 Pac. 264, the statutes relating to powers of county commissioners have been construed by this court, and the provisions therein held to be valid and binding. These statutes were enacted to meet a dire necessity for protection against an annually increasing indebtedness and overburdensome taxation to meet same. * * * This statute plainly says and means that the limit therein prescribed shall not be exceeded. * * * A statute designed and enacted to guard against contracts in excess of the prescribed limits.

"The court below heard and determined from all the evidence that the limit of indebtedness had been exceeded before this contract was made. The record supports the court's finding in this regard, and there is nothing left for this court to do except to either uphold or set at naught a plain. valid. and wholesome provision of law. It is not a question of repudiation, as intimated by counsel for plaintiff in error. That question is not involved. It is a plain, legal question whether the contract was valid or void. * * * Nor is the question affected on the theory that plaintiff was ignorant of the provisions of law. and that it entered into this contract in good faith, believing the mayor and city council had authority, under the law, to make such a contract."

The plaintiff further contends that. even though the agreement was void, so far as it relates to creating a liability against the city, that clause of the contract which provides that on failure of the city to comply with the contract "the property mentioned therein should remain the property of Fairbanks, Morse & Co., with the right to take possession and remove the same," is a separate and valid agreement, and therefore, not being tainted with an attempted violation of the statutes, may be enforced. We cannot give our consent to that view of the contract. To our mind this is a single contract, for a single object, for a single consideration, and comes clearly within the meaning of secs. 928 and 929. Rev. Laws 1910, which provide:

928. "The consideration of a contract must be lawful.

929. "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void."

This case involves a single contract for the single consideration of $2,400, paid part in cash, part in property, and part to be paid in deferred payments. For this consideration the plaintiff sold to the defendant the property involved, with the further agreement that in case defendant failed to pay the balance at the times stipulated the plaintiff had the right to retake the property. That last provision was an important part of the consideration. Just how much it affected the price paid or influenced the minds of the parties, or either of them, cannot now be estimated, but it certainly had its influence. The text in Clark on Contracts is quoted with approval in Arnett v. Wright, 18 Okla. 342, 89 Pac. 1116, as follows:

"Where the agreement consists of one promise, made upon several considerations, some of which are good and some bad, here also the promise is wholly void; for it is impossible to say whether the legal or illegal portion of the consideration must affect the mind of the promissor, and induce him to promise."

In Garst v. Love, 6 Okla. 57, 55 Pac. 19, this court approves the text laid down in sec. 340 of Lawson on Contracts, which is as follows:

"If any part of a single consideration for one or more promises is illegal the whole agreement is void; for public policy will not permit a party to enforce a promise which he has obtained by an illegal act or an illegal promise, although he may have connected with this act or promise another which is legal."

And also sec. 471 of Bishop Contracts, in this language:

"A contract illegal in part and legal as to the residue is void as to all, when the two parts cannot be separated; when they can be, the good will stand, and the rest fall. One entire consideration cannot, within this rule, be separated, though composed of distinct items, some of which are legal and others illegal."

In Trist v. Child, 21 Wall. 441, 22 L. Ed. 623, Justice Swayne, speaking for the court, says:

"But, where they are blended and confused with those which are forbidden, the whole is a unit and undivisible. That which is bad destroys that which is good, and they perish together. * * * Where (the taint) exists, it affects fatally, in all its parts, the entire body of the contract. * * * Where there is turpitude, the law will help neither party."

In Dennis v. Kuster, 57 Kan. 215, 45 Pac. 602, the syllabus is as follows:

"Where a parol agreement is made to exchange real property of the plaintiff for the homestead and other real property of the defendant and a stock of merchandise, to which the defendant's wife refuses to assent, the contract, being entire, is void, not only as to the land, but also as to the merchandise, and the plaintiff cannot maintain an action to recover the merchandise from the defendant."

In Flersheim v. Cary, 39 Kan. 178, 17 Pac. 825, the court says:

"This presents the question: Is the mortgage void because of the fact that it included, among other property, intoxicating liquors? This question is no longer an open one in this state. This court, in Korman v. Henry, 32 Kan. 49 [3 Pac. 764], and Gerlach v. Skinner, 34 Kan. 86 [8 Pac. 257, 55 Am. Rep. 240], held that, where a chattel mortgage was given on property and included intoxicating liquors, it was void, and that it was not only void as to the liquor, but as to all the property contained in said mortgage. But plaintiffs insist that, if the mortgage for that reason is void, the defendant, by reason of his agreement to pay the mortgage debt as a part consideration in its purchase, is estopped from denying its validity. If this was an action on the promise of the defendant to pay the mortgage debt to the plaintiffs, and judgment was sought against him for the amount due, and which the defendant agreed to pay, the action would be maintainable; but, where the provisions of the mortgage are sought to be enforced, and the mortgaged property recovered, the validity of the mortgage is then brought in question. The action is then one upon the mortgage, and not upon the promise of the purchaser of the mortgaged property to pay the mortgage debt. The mortgage being void, no action can be maintained to enforce it."

The same rule is laid down in Gerlach v. Skinner, 34 Kan. 86, 8 Pac. 257, 55 Am. Rep. 240, as follows:

"Where a part only of the consideration of an entire contract is illegal, and the contract is not in its nature divisible or separable, the contract is tainted, and will be treated as wholly void."

This court has many times, and without a single exception, approved and followed that doctrine. It seems to be too well settled to require citation of authorities or further argument to maintain the rule that, where parties enter into an illegal contract, the court will not use its power, or lend its officers to aid them, but will leave them where it finds them.

"Where the consideration of a contract is illegal in part, the whole is vitiated thereby." Standard Lumber Co. v. Butler Ice Co., 146 Fed. 359, 76 C. C. A. 39, 7 L. R. A. (N. S.) 467; Brieske v. Chicago Street Railway Co., 82 Ill. App. 256; Wilson v. Parrish, 52 Neb. 6, 71 N. W. 1010; McCormick Harvester Co. v. Miller, 54 Neb. 644, 74 N. W. 1061; Wegner

Bros. v. Biering, 65 Tex. 506; Burck v. Abbott, 22 Tex. Civ. App. 216, 54 S. W. 314.

"Where the consideration of the contract is illegal or contrary to law or public morals and money has been paid under said contract, the court will not aid the payer to recover it back." Platt v. Elias, 186 N. Y. 374, 79 N. E. 1. 11 L. R. A. (N. S.) 554, 116 Am. St. Rep. 558, 9 Ann. Cas. 780.

"The law will not lend its support to a claim founded upon its own violation." Coppell v. Hall, 7 Wall. 542, 19 L. Ed. 244; Berka v. Woodward, 125 Cal. 126, 57 Pac. 777, 45 L. R. A. 420, 73 Am. St. Rep. 31.

"No right of action can spring out of an illegal contract." Pratt v. Short, 79 N. Y. 437, 35 Am. Rep. 531.

"No action can be maintained upon a contract made illegal by statute." Nix v. Bell, 66 Ga. 664.

"No principle of law * * * is better settled than that no action will lie upon a contract made in violation of a statute." Wheeler v. Russell, 17 Mass. 258.

"When an action is by statute forbidden to be done without express authority of law, no action can be maintained upon any contract arising out of it." Seamans v. Temple, 105 Mich. 400, 63 N. W. 408, 28 L. R. A. 430, 55 Am. St. Rep. 457.

"An action founded upon a contract prohibited by statute is not maintainable." Holt v. Green, 73 Pa. 198, 13 Am. Rep. 737.

"No case * * * can be found where an action has been sustained which goes in affirmance of an illegal contract; and where the object of it is to enforce the performance of an engagement prohibited by law." Hunt v. Knickerbacker, 5 Johns. (N. Y.) 327.

"Every act done against a prohibitory statute is not only illegal, but absolutely void." Hallett v. Novion, 14 Johns. (N. Y.) 273.

"No man can come into a court of justice to seek the assistance of the law, who founds his claim upon a contravention of the law." Gregg v. Wyman, 4 Cush. (Mass.) 322.

"No court will lend its aid to enforce any contract contravening a positive law." Jackson v. Shawl, 29 Cal. 267.

Nor must it be forgotten that:

"Whoever deals with a municipality does so with the notice of its limitation on it or its agents' power."

"All are presumed to know the law, and those who contract with it or furnish it supplies do so with reference to the law; and, if they go beyond the limitation imposed, they do so at their peril." O'Neil Eng. Co. v. Town of Ryan, 32 Okla. 738, 124 Pac. 19.

The summary of the whole proposition is, as said in O'Neil Eng. Co. v. Ryan, supra:

"The intention and plain effect of the provision of the Constitution under consideration is to require municipalities to carry on their operations upon the cash or pay as you go plan. The revenues of each year must take care of the expenses of such year; and any liability sought to be incurred by contract, express or implied, executed or executory, in excess of such current revenue, in hand or legally levied, is void, unless it be authorized by a vote of the people, and within the limitation therein required. Campbell v. State ex rel., 23 Okla. 109, 99 Pac. 778; City of Ardmore v. State ex rel., 24 Okla. 862, 104 Pac. 913; Spilman v. City of Parkersburg, 35 W. Va. 605, 14 S. E. 279; Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132; San Francisco Gas Co. v. Brickwedel, 62 Cal. 641; McGowan v. Ford, 107 Cal. 177, 40 Pac. 231; Sutro v. Pettit, 74 Cal. 332, 16 Pac. 7, 5 Am. St. Rep. 442; First National Bank v. Doon Dist. Tp. 86 Iowa, 330, 53 N. W. 301, 41 Am. St. Rep. 489; Lake County v. Rollins, 130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060. In the Campbell Case, supra, Mr. Justice Williams, in discussing this provision, says: 'The settled purpose has been to place restrictions and limitations upon the taxing power by a restriction upon the outlay of the money after it has been collected by the people. Under this provision the government is dependent from year to year upon the periodical vote of supplies.' And further: 'No one idea stands out more clearly than that barriers should be erected against the creation of municipal indebtedness.'

"It is apparent that the contract in suit, if its effect was to incur a present obligation or indebtedness against the defendant, was and is void, because there were no funds on hand, or legally levied, out of which any payments could have been made on it; and no vote of the electors had authorized the creation of such obligation or indebtedness, as required by the Constitution."

We construe this contract to be a conditional sale, and have so treated it. The contentions of defendant that plaintiff should have filed with the city council a verified itemized statement for the amount of his claim, and made demand for a return of the property, are both without merit as the facts appear in this case. The board had been perpetually enjoined from paying the claim, and it fully appears from the record that a demand for the property would have been futile. Under the Constitution and laws of this state, and the numerous decisions of the supreme court construing the same, we could not follow the cases cited by plaintiff in error, even if they went to the extent claimed by counsel, which we do not concede.

We find no prejudicial error in the case, and it should therefore be affirmed.

By the Court: It is so ordered.