MARY LOUISA VAN TUYL and others *vs.* OTTO W. E. VAN TUYL, CATHARINE TAYLOR and others.

A valid marriage, to all intents and purposes, is established by proof of an actual contract, *per verba de præsenti*, between persons capable of contracting, to take each other for husband and wife; especially where the contract is followed by cohabitation.

No solemnization or other formality, apart from the agreement itself, is necessary.

Nor is it essential to the validity of the contract, that it should be made before a witness.

Yet a contract, *per verba de præsenti*, constitutes marriage only when the parties intend that it shall do so without any subsequent ceremony. A proposition to cohabit as man and wife, with an assurance of a future marriage, would be a nullity.

In a partition suit between the children of the husband by his first wife, and his children by a woman claiming to have been his second wife, the latter is a competent witness in behalf of her children, to prove their legitimacy.

The rule excluding the testimony of the wife, as to her husband's declarations to her during the existence of the marriage relation has no application to words spoken at the very time of forming the marriage.

The fair construction of section 399 of the Code of Procedure is, that when adverse rights by succession are involved, one litigant shall not testify to a transaction with the deceased predecessor in title, invalidating or impairing the right or title of the other.

The declarations of the husband, made in promiscuous conversations having no reference to his relations with his wife, or to the *status* of her or her children, are inadmissible as evidence.

MOTION for a new trial. The action was brought for a partition of the real estate of William Taylor, of Rye, Westchester county, deceased. The plaintiff, Mary Louisa Van Tuyl, and the defendants, Sophia Jane Van Tuyl, Maria E. Taylor and Isaac V. Taylor, were his children by a former marriage, and claimed to be his sole heirs at law, and sought in this action to exclude the defendant Catharine Taylor and her children from sharing in said estate.

The defendant Catharine Taylor claimed to have been the wife, and to be the widow, of Mr. Taylor, and entitled to dower, and that her children, the issue of such marriage,

were entitled to share as heirs at law with the children of
the former marriage.

No ceremonious marriage had been solemnized between
Mr. Taylor and Catharine Taylor. She had been living
as a seamstress in his family. After the decease of his
former wife, he offered marriage to Catharine, which she
rejected; but he persisted, and forcing himself into her
bedroom repeatedly renewed the offer. He said that he
wanted to get married, but that it would not be the thing
for him to get married publicly, on account of the recent
death of his wife, and the opposition of his family. She
objected that her bedroom was not a fit place for a private
conversation. He asked her if she would object to cohabit
with him, and be a wife to him. She said she was un-
willing, because she did not think it right, where there
was not a ceremony of marriage performed. He said it
was not necessary that there should be a ceremonious
marriage. That in law it was just as binding a marriage
between them alone, with God to witness, as any bishop
or minister in New York could make it. That if they
made an agreement between themselves to live in that
state as man and wife, and be true to each other, it would
be as legal a marriage as though a public ceremony were
performed. She finally consented to receive him as her
husband, and they secretly cohabited together, in the house
at Rye, for some time. She subsequently left his house,
and went to live at Harlem, in a house furnished her
by Mr. Taylor. She did not return to Rye, but continued
to reside at Harlem, under the name of Mrs. Johnson.
She frequently introduced Mr. Taylor to her friends as
her husband, and he recognized her as his wife, before
them. These facts were kept from his family at Rye by
his request, and it was for the same reason that she used
the name of Johnson.

On the trial, Catharine Taylor was called and examined
as a witness, to prove these facts, on behalf of the infant

children of such alleged marriage, although the plaintiff, and the other defendants raised the objection that she was incompetent, under section 399 of the Code of Procedure.

The declarations of Mr. Taylor to his family at Rye, and others, that he was not a married man, were excluded by the court.

*Robert Cochran*, for the plaintiff. ·

. *Abel Crooke, John B. Haskin* and *S. E. Lyon*, for the defendant Catharine Taylor.

GILBERT, J.   I wish it was in my power to aid the plaintiff's counsel in their efforts to take away from our law, respecting the marriage contract, the reproach imputed to it.   But that task belongs to the legislature, and not to the judiciary.   As the law stands, a valid marriage, to all intents and purposes, is established by proof of an actual contract, *per verba de præsenti*, between persons of opposite sexes, capable of contracting, to take each other for husband and wife; especially where the contract is followed by cohabitation.   No solemnization, or other formality, apart from the agreement itself, is necessary. (*Clayton* v. *Wardell*, 4 *N. Y. Rep.* 230.   *Cheney* v. *Arnold*, 15 *id.* 345.   *Caujolle* v. *Ferrie*, 23 *id.* 106, *and cases cited. See also Hubback on Successions, ch.* 4, § 1.)

Nor is it essential to the validity of the contract, that it should be made before a witness.   This was held, in so many words, by Bradford, surrogate, in *Tummalty* v. *Tummalty*, (3 *Bradf.* 372.)

A written instrument being such contract, is, of course, admissible and proper evidence.   Thus in England, the original contract is deemed the proper evidence of a Jewish marriage, (*Horn* v. *Noel*, 1 *Camp.* 61;) and letters or other written declarations or acknowledgments, expressive

of the requisite consent, are at least evidence of, if they do not, *proprio vigore*, constitute, marriage. (*Dalrymple* v. *Dalrymple*, 2 *Hagg. C. R.* 59.) Before the change in the law, whereby parties to suits are permitted to testify in their own behalf, the actual making of a contract resting in parol might not be susceptible of proof; but this did not render it invalid or inoperative, for it might still be established by circumstantial evidence. (*Authorities supra.*) I am therefore unable to perceive any error in the charge to the jury on this subject.

It is urged, however, that it being a part of the agreement proved in this case, that the marriage should at some time thereafter be solemnized in church, the same was void, because the contract, *per verba de præsenti*, constitutes marriage only when the parties intend that it shall do so without any subsequent ceremony. This rule of law is probably correct, for the reason stated by Lord Campbell in the *Queen v. Willis*, (10 *Cl. & F.* 534,) that "it is easy to conceive that parties might contract *per verba de præsenti* without meaning instantly to become man and wife." And it was with reference to this principle that the court, upon a request of the counsel for the plaintiffs, instructed the jury to find that "if a proposal of marriage was made by Mr. Taylor—if he understood it as a proposal of marriage, and it was so understood by her, and she accepted that proposal—it was a valid contract of marriage." If, on the other hand, as is contended on the part of the plaintiffs, this was a proposition to cohabit as man and wife, with an assurance of a future marriage, it would be a nullity. The law requires an actual meeting of the minds of the parties upon that question, namely, that they shall thenceforth, from the time of making the agreement, be husband and wife. The point was fairly met, and, upon the evidence, was one for the jury to determine.

The contract of marriage was proved by Mrs. Taylor alone. Was she a competent witness? The rule invoked

by counsel, excluding the testimony of the wife, of her husband's declarations to her during the marriage relation, has no application to words spoken at the very time of forming the marriage. That rule rests upon public policy, which invests communications between husband and wife, during marriage, with a confidential character. (*Chamberlain* v. *The People*, 23 *N. Y. Rep.* 89.)

The objection to the witness was placed upon the ground of her incompetency generally. She was admitted as a witness only in behalf of her children, to prove their legitimacy. This was excepted to, but no objection was made to any specific portions of her testimony in favor of or against any parties other than her children.

There can be no doubt that by the common law she was a competent witness either to bastardize the issue of the supposed marriage, or to establish their legitimacy. (*Rex* v. *Bramley*, 6 *T. R.* 330. *Goodright* v. *Moss, Cowp.* 593.) In the last case Lord Mansfield said, in reference to the competency of the parents : " I should as soon have expected to hear it disputed whether the attesting witness to a bond could be admitted to prove the bond." And he mentions a case where a mother was allowed to prove a clandestine marriage at the Fleet. No other evidence was given to show the legitimacy of the child, and a great estate was recovered upon her single testimony. By the enactment of the Code the legislature certainly did not intend to abrogate or restrict this rule. They removed all disqualification on the ground of interest. (§ 389.) They then allowed the examination of a party on behalf of a co-party, as to any matter in which he is not *jointly* interested with such co-party. (§ 397.) The matter as to which Mrs. Taylor testified was the legitimacy of her children, the marriage being only a link in the chain of evidence to establish that fact. Surely she was not, in a legal sense, interested with her children *jointly* in that matter. The language of section 399 is a little obscure, but I cannot

think that the legislature intended to exclude testimony in a partition suit, in favor of one set of heirs, because it might operate against another set. The enacting clause of this statute is general. The exception is of an examination of a party *against* an heir at law, when the examination or judgment in the action can affect the interest of *the witness*. I do not think that the testimony of one tenant in common, in a partition suit, ought to be regarded as being against a co-tenant, within the meaning of this section. The fair construction of it is, that when adverse rights by succession are involved, one litigant shall not testify to a transaction with the deceased predecessor in title, invalidating or impairing the right or title of the other. In this case, too, the interests of the parties are separate and distinct. In ejectment by one heir of the deceased Mr. Taylor against another heir, the testimony of Mrs. Taylor as to transactions with her husband would have been competent. Her competency ought not to be affected by making her a party to a suit like this, where the same question is involved. Such a construction would put it in the power of any person, by bringing a partition suit, to deprive his adversary of testimony admissible in itself, on the mere ground that the witness is a nominal party to the suit, although not legally interested in the subject matter thereof. A suit in partition is based upon the fact that all the parties to it have undivided, but divisible, interests in the subject thereof, the end sought being a division merely. Where it is sought to embrace in such a suit the elements of an action of ejectment, or of a writ of right, especially where, as in this case, special issues have been framed for the trial of the latter, the legal rights of the parties, in relation to this subject, can be protected only by giving this section of the Code a corresponding construction, and by treating those averments which raise contestation upon the legal title, and the issues framed thereupon, as in legal effect a separate proceed-

Van Tuyl *v.* Van Tuyl.

ing, within the meaning of section 399 of the Code. And this is in accordance with the rule that a proviso is construed strictly. It "carries special exceptions only out of the enacting clause; and those who set up any such exception must establish it as being within the words *as well as within the reason thereof.*" (*Per Story, J., United States* v. *Dickson,* 15 *Peters,* 165.)

The only remaining question is, whether the exclusion of the declarations of Mr. Taylor, made in promiscuous conversations, having no reference to his relations with Mrs. Taylor, that he was not a married man, was erroneous. Such declarations do not come within the rule relating to hearsay on the subject of pedigree, for none of them were spoken with reference to the *status* of Mrs. Taylor or her children. For the same reason, they are not admissible as part of the *res gestæ.* To be admissible on the latter ground, they must be connected with the act or transaction in controversy. None of the cases cited by the plaintiffs' counsel furnish an exception to the rule. In those from the surrogate's court, the declarations were of a character, or made under circumstances, clearly indicating that they related to the individual whose *status* was in controversy. In *Clayton* v. *Wardell,* (4 *N. Y. Rep.* 230,) and *Matter of Taylor,* (9 *Paige,* 611,) the rule stated was clearly announced; and in *Jewell* v. *Jewell,* (1 *How. U. S. Rep.* 119,) the Supreme Court of the United States recognized and applied the same principle.

If the foregoing views are correct, no error was committed, upon the trial, and I see no reasonable ground for complaining of the verdict. So far from being against the weight of evidence, it is fully supported thereby. Although the court might not have given full credence to the testimony on which it rests, or might have come to a different conclusion from the jury upon other grounds, that, in my judgment, affords no proper reason for dis-

Van Tuyl *v.* Van Tuyl.

turbing the verdict. It must appear that a fair trial has not been had, or that errors have been committed by the court or jury, affording a reasonable doubt as to the justice of the result. (*Forrest* v. *Forrest*, 25 *N. Y. Rep.* 510.) Where the evidence so strongly preponderates as to justify only one conclusion, it is the duty of the court, on the trial of special issues, to instruct the jury as to the posture of the case, upon the evidence. (*Mountain* v. *Bennett*, 1 *Cox*, 353.) Where the evidence is such as to render such a course improper, but the case is one peculiarly within the province of a jury to determine, it is equally the duty of the court to submit the whole case to them, and to abstain from any interference with their verdict honestly given. Such was this case. To send it back for a new trial would be contrary to a due administration of justice, by unwarrantably prolonging a controversy which it is the right of the parties and the interest of the public to have terminated.

The motion for a new trial must be denied, and judgment upon the verdict must be entered, declaring the rights of the parties, and referring it to John W. Mills, Esq., to take proof of title, incumbrances, &c.

A clause may also be inserted appointing Calvin E. Pratt receiver, upon his giving the security, and subject to the directions verbally stated by me.

[KINGS SPECIAL TERM, January 4, 1869. *Gilbert*, Justice.]