### DIETRICH v. DIETRICH.

(Supreme Court, Appellate Division, First Department.   November 13, 1908.)

1. MARRIAGE (§ 20*)—WITNESSES—NECESSITY FOR.

A present agreement between competent persons to take each other for husband and wife constitutes a valid "marriage," though there be no witnesses.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 12–14; Dec. Dig. § 20.*

For other definitions, see Words and Phrases, vol. 5, pp. 4390–4398; vol. 8, p. 7717.]

2. MARRIAGE (§ 48*)—COMMON-LAW MARRIAGE—PROOF.

A marriage, in the absence of witnesses, may be proved by showing actual cohabitation as husband and wife, acknowledgment, declarations, conduct, repute, reception among neighbors and relations, etc.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 76; Dec. Dig. § 48.*]

3. EVIDENCE (§ 53*)—"PRESUMPTIONS OF FACT."

"Presumptions of fact" are but inferences drawn from other facts and circumstances in the case, and should be made upon the common principles of induction.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 73; Dec. Dig. § 53.*

For other definitions, see Words and Phrases, vol. 6, pp. 5537–5538; vol. 8, p. 7762.]

4. DEATH (§ 2*)—PRESUMPTIONS—LAPSE OF TIME.

Since the presumption of continuance of life is only overcome by a lapse of 7 years' absence and unsuccessful honest efforts to. find or hear from the missing person, plaintiff's first husband will not be presumed to have died during the 13 months between the time she saw him last and the time when she claims to have married defendant.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 2; Dec. Dig. § 2.*]

5. MARRIAGE (§ 40*)—PRESUMPTIONS—CONTINUANCE OF RELATIONS.

Cohabitation, having begun meretriciously, will be presumed to have so continued, in the absence of clear proof of a subsequent marriage.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 61; Dec. Dig. § 40.*]

6. MARRIAGE (§ 40*)—EXISTENCE OF MARRIAGE—BURDEN OF PROOF.

One seeking a divorce must show a valid and existing marriage.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 68; Dec. Dig. § 40.*]

7. MARRIAGE (§ 50*)—EVIDENCE—SUFFICIENCY.

No valid marriage between plaintiff and defendant is shown by proof that plaintiff lived with her first husband until, and saw him late in, 1892; that in 1893 she began a meretricious relation with defendant; that subsequently they lived together; that a child was born in 1894; that in 1896 plaintiff and defendant agreed in writing to live together, she signing her maiden name and it being conceded not to be a contract of marriage; and that the agreement was suspended for four weeks and reinstated in 1899.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 79–89; Dec. Dig. § 50.*]

Appeal from Special Term, New York County.

Action by Katie Dietrich against Michael Dietrich.   From a judg-

ment for plaintiff, defendant appeals.　Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and CLARKE, HOUGHTON, McLAUGHLIN, and SCOTT, JJ

August P. Wagener, for appellant.

Joseph G. Grauer (Charles A. Rathkopf, on the brief), for respondent.

CLARKE, J.　Appeal from a judgment entered upon a decision in an action for a separation upon the ground of cruel and inhuman treatment.　The amended complaint alleged in paragraph 2:

"That on or about January 15, 1894, at the city, county, and state of New York, the said plaintiff, Katie Dietrich, intermarried with the defendant, Michael Dietrich, whose wife she now is."

The answer denied the allegation contained in the second paragraph of the complaint, and for a further separate and distinct defense alleged:

"Upon information and belief, that at the time of contracting the alleged marriage, set forth in the complaint, plaintiff was a married woman, had a husband living, from whom she had not been divorced, which marriage was in full force and effect at the time of the alleged marriage between plaintiff and defendant."

The learned court in its decision found as a finding of fact that "on or about January 15, 1894, at the city, county, and state of New York, the said plaintiff, Katie Dietrich, intermarried with the defendant, Michael Dietrich," and as conclusions of law that "the plaintiff and defendant were married on or about January 15, 1894, and that the plaintiff is the lawful wife of the defendant herein," and the judgment decreed a separation, custody of a child, alimony, costs, and counsel fee.

The sole question presented to this court is whether the evidence sustains the finding of fact and conclusions of law above quoted.　On her direct examination, the plaintiff testified:

"I first made the acquaintance of the defendant when I came to Thirty-Eighth street to seek for a position, in 1893.　He said to me that I should come after— His sister kept house for him, and his sister got married, and after his sister got married he said I should go and keep house with him and be his wife.　After he said that I immediately went to live with him as his wife.　I took up rooms and began housekeeping as such at 206 East Thirty-Eighth street.　I lived with defendant at that address eight years.　There is issue of our marriage, Lena, a girl.　My husband, the defendant, was the father of this child.　This child was born September 24, 1894.　My husband asked me in 1894 to go to a notary public for the purpose of drawing up an agreement.　Q. What was the substance of that agreement, as nearly as you can recollect?　A. It was that the party of the first part agrees to live with the second party as man and wife, and the party of the first part— Q. Tell. who the party of the first part was.　A. My husband, Michael Dietrich, and he agreed in the agreement to issue a policy of the Metropolitan Life Insurance Company to my favor for the sum of $1,000, of which I was supposed to be the beneficiary.　Q. What became of that agreement?　A. I lost mine. * * * Q. Was that before or after the birth of your child?　A. After the birth of my child.　At the time that I went to the notary public with defendant, my husband said to the notary public that I was his wife and he would like to have an agreement drawn; that he agreed to live with me; that we ."

agreed to live together as husband and wife. He told the notary public to set up the statement, and he wrote it down, and after he had it down he read it out to me. At that time I did not understand English very good; but after he wrote that down they asked me to sign it, and I signed the agreement. I was 23 years of age then. I had known my husband two years previous. Q. Was there anything at any time said between you in reference to a ceremonial marriage? A. No, sir; not to my knowledge. Q. Do you know why you were not married in church, or had a church ceremony? A. My husband said he did not believe in ceremony. He said it was more publicity than anything else. So he said that it was just the same for us to live together as man and wife that way, as to undergo a ceremony. * * * From the time I married, I always lived in that block within Thirty-Eighth street. He introduced me to his parents and to our friends and to his friends as 'my wife.' After I began this proceeding he said I was not his wife, but never before that. In the places where I resided I was known as Mrs. Dietrich. I did business in the vicinity with trades people as Mrs. Dietrich."

She testified that they separated on August 10, 1906. There was admitted in evidence on her behalf an application to the Metropolitan Life Insurance Company, dated January 18, 1900, for a policy of insurance in the sum of $1,000, which application was signed by the defendant and also by the plaintiff as beneficiary. In this application the defendant answered in writing the following questions:

"Married (widower or widow)? Married. Name of person to whom, if living, policy is to be paid in case of death of the insured? Kate Dietrich. Age? Twenty-seven. Relationship? Wife. Occupation, post office address of proposed beneficiary? Housewife, 206 East 38th St., New York City."

And it was admitted that upon that application a policy was issued. The plaintiff produced several witnesses from the neighborhood, who testified to cohabitation, holding out, introduction, admission, and reputation, tending to show a matrimonial cohabitation.

There was enough to warrant a finding of marriage in this evidence, standing by itself. A present agreement between competent parties to take each other for husband and wife constitutes a valid marriage, even if not in the presence of witnesses. Clayton v. Wardell, 4 N. Y. 230; Caujolle v. Ferrie, 23 N. Y. 90; Brinkley v. Brinkley, 50 N. Y. 184–197, 10 Am. Rep. 460. Such a marriage may be proved by showing actual cohabitation as husband and wife, acknowledgment, declarations, conduct, repute, reception among neighbors and relations, and the like. Gall v. Gall, 114 N. Y. 109, 21 N. E. 106. But the rule is predicated upon the competency of the parties.

Upon cross-examination of the plaintiff, however, it appeared that on the 24th of October, 1892, she had been married to one Otto Krabiel at the city of New York, in the presence of witnesses, by an alderman of the city, and a transcript of the certificate and record of the marriage, recorded on the 22d of November, 1892, was put in evidence. She testified that after her marriage with Krabiel on October 24, 1892, she lived with him until the 3d of November, 1892, when she left him; that she was a servant in Roosevelt Hospital under her maiden name of Reischmann after she left her husband, Krabiel, in the winter of 1892; that Krabiel came and called on her and bothered her, and the superintendent told him that he was to stay away and he was not allowed to bother her; that it was December, 1892, when she saw him last; and that she had not seen him since.

She testified that she told Dietrich that she was married, and that her husband was alive the last she heard of him, but since she heard that he was dead, and that Dietrich said:

" 'I don't care whether you have 50 husbands or not.' Q. Now, you say that you told the defendant that your first husband was dead? A. I did. Q. When did you tell him that? A. I told him that before he agreed with me to live together as man and wife. * * * It was in 1893. * * * Q. Can you tell the place where it was said? A. I can. Q. Where was it? A. Forty-Second street in a hotel. Q. Where you and he had gone to sleep? A. Yes, sir. Q. That was before you lived together? A. Yes, sir. Q. And in 1893 you say that was? Was that in the summer? A. No, sir; to my knowledge it was in the winter."

Again she testified:

"I will not swear that I told him in 1893. I will swear that I am sure I told him before the agreement was made."

The paper which the plaintiff testified was executed before a notary public in duplicate, and the copy of which she said was lost, was put in evidence by the defendant. The complaint alleges, and the court has found, a marriage on or about January 15, 1894. This paper is dated November 10, 1896, and is as follows:

"This agreement, entered into between Michael Dietrich, of the city, county, and state of New York, party of the first part, and Catherine Reischmann of the same place, party of the second part, witnesseth: That in consideration of said party of the second part agreeing to live with Michael Dietrich as his wife, said Michael Dietrich agrees to pay Catherine Reischmann the sum of one hundred dollars, per year, and to insure his life in favor of said Catherine Reischmann to sum of one thousand dollars, and to keep this policy in force and operation by paying the premiums when they become due. The party of the second part, Catherine Reischmann, agrees that if from her own free will she should at any time hereafter leave Michael Dietrich, party of the first part, and refuse to live with him as his wife, the payment of the one hundred dollars per year shall cease immediately, and a pro rata share paid. In the above event she further agrees to release said Michael Dietrich of all claims whatsoever, for support or any other claim she may have, against him, excepting the keeping up of the policy aforementioned. Should the party of the second part give good reasons to the party of the first part, whereby the party of the first part should be compelled to leave the party of the second part, he shall be allowed to do so by paying her the sum of fifty dollars besides the pro rata share due her. This contract is to take effect immediately.
"Dated New York, November 10, 1896.      Michael Dietrich [L. S.]
                                        "Katharine Reischmann [L. S.]"

The plaintiff testified that she left the defendant and remained away from him for four weeks in the year 1899. On the back of the paper executed November 10, 1896, appears the following supplementary agreement, executed and acknowledged before a notary public, bearing date the 17th day of July, 1899:

"It is understood and agreed between the parties to the foregoing agreement that whereas, they have been living separate for a period of about four weeks in accordance with the terms of said agreement; and whereas, it is the desire and wish of both parties to renew the said agreement on the same terms as herein stipulated: This agreement witnesseth that in consideration of the mutual promises and agreements therein contained that we jointly and severally hereby renew the same to and for all intents and purposes as therein recited and enumerated. As witness our hands and seals this 17th day of July, 1899.                          Michael Dietrich. [L. S.]
                                        "Katharina Reischmann. [L. S.]
"In presence of C. Von Oden Hughes."

It conclusively appears, therefore, that on the 24th of October, 1892, the plaintiff entered into a ceremonial marriage with Otto Krabiel, with whom she lived as his wife until the 3d of November, 1892, and that she saw him as late as December, 1892; that in 1893 she began a meretricious relation with the defendant in a hotel, where they had gone to spend the night together; that subsequently she and the defendant began to live together; that the child was born on September 24, 1894; that on November 10, 1896, plaintiff and defendant entered into an agreement in writing, the plaintiff signing her maiden name, which agreement is not a contract of marriage, and conceded not to be such a contract, but upon its face an agreement to live together; that the contingency having arisen which put an end to the contract, under the terms thereof, thereafter and on the 17th day of July, 1899, it was reinstated by mutual consent, again being signed by plaintiff in her maiden name.

It would seem to be difficult to sustain a finding of a legal marriage between the plaintiff and the defendant on or about the 15th of January, 1894. The marriage with Krabiel on October 24, 1892, is conceded to have been a valid marriage. There is no suggestion, that it was ever dissolved by a decree of the court. The claim is that the court should presume that Krabiel died between December, 1892, and January, 1894, a period of a little over a year. There is no proof of his death during that period or up to the present time. The plaintiff testified that she had been informed that Krabiel had died at Bellevue Hospital and had been buried in the Potter's Field; that she had made an investigation in the '90's; that she had visited the Bellevue Hospital, Post Graduate Hospital, and the Morgue, and had a search made of the records of the board of health, but could find no record at any of those places of Krabiel's death. She testified that two or three people had told her of his death at the hospital; but none of those people were produced, and there is no corroboration of her statement. Her testimony as to these efforts and the date at which they were made was involved in such a maze of contradictions as to be utterly unreliable, especially in view of the fact that she testified that in 1907, for the purposes of this suit, she made the same kind of a search and investigation, with the same result.

In actions involving the matrimonial relation, especially where the legitimacy of children is involved, the courts have frequently indulged presumptions in support of honesty and decency of life and to prevent the bastardizing of innocent children. Presumptions of fact are but inferences drawn from other facts and circumstances in the case, and should be made upon the common principles of induction. O'Gara v. Eisenlohr, 38 N. Y. 296. There was no presumption that on the 15th of January, 1894, Otto Krabiel was dead. The plaintiff had seen him and knew he was alive in December, 1892. There is a presumption of the continuance of life, and that presumption is not overcome until the lapse of seven years, and then only after honest and bona fide attempts to find or hear from the missing person have met with failure. There is no satisfactory proof of such attempts in the intervening year and a month, and, of course, the seven years had not elapsed at the time of the alleged marriage at bar. And when, in

connection with the established previous marriage, the relation between the plaintiff and defendant concededly had a meretricious beginning, established by the plaintiff's own testimony that the defendant said he did not care whether she had 50 husbands, and that she had slept with him at a hotel before any agreement was made for her to go and live with him, the presumption is that that meretricious relationship continued. This presumption could only be destroyed by clear and convincing proof of a subsequent marriage. It seems clear that such marriage had not taken place down to the 17th of July, 1899, when the supplementary agreement hereinbefore set forth was entered into of that date; and there is no claim that since said date any agreement of marriage per verba in præsenti has been entered into. If it should be now assumed that Krabiel is dead, more than seven years having elapsed since the plaintiff last saw him, so that there would be room for the presumption, which has been indulged in certain cases, that after the removal of the obstacle there had been a remarriage, such a conclusion is not warranted by the evidence in this case, where the only marriage alleged in the complaint, found by the court, if supported at all in the evidence, was testified to as on or about January 15, 1894. The burden is upon the plaintiff to establish a valid and existing marriage before she can obtain a decree of separation. This she has failed to do.

It follows, therefore, that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.