In the Matter of the Claim of HELEN C. DONDERO, Appellant, against QUEENSBORO NEWS AGENCY, INC., et al., Respondents. STATE INDUSTRIAL BOARD,* Respondent.

Third Department, January 9, 1946.

* By chapter 74 of the Laws of 1945, effective April 1, 1945, the functions of the State Industrial Board were transferred to the Workmen's Compensation Board created by said chapter.— [REP.

*Irving B. Cohen,* attorney (*Irving B. Cohen* and *Samuel Mezansky* of counsel), for claimant.

*Bernard Katzen,* attorney (*George J. Hayes* and *Victor Fiddler* with him on the brief), for respondents.

*Nathaniel L. Goldstein, Attorney-General,* for State Industrial Board, respondent.

HILL, P. J. It was found by the State Industrial Board in January, 1943, that Edward Dondero came to his death January 1, 1941, as the natural and unavoidable result of injuries which he sustained that day in the regular course of his employment. The employer, Queensboro News Agency, Inc., and the carrier, the State Insurance Fund, have been released from liability in connection with the claim for death benefits made by appellant, Helen C. Dondero, the alleged widow. It is found, and unquestioned, that appellant Helen and decedent Edward entered into a ceremonial marriage on April 18, 1929, and it is not disputed that from that time on, these parties lived and cohabited as man and wife. The board has found that marriage to be illegal and, so far as compensation is concerned, has annulled it, upon the ground that at the time of Helen's marriage to decedent she was the common-law wife of one Edward Hughes. The claimant was sworn in her own behalf as was Edward Hughes, and each says that there was no common-law marriage. Each admits meretricious relations, cohabitation, and a limited reputation of being man and wife, all prior to the ceremonial marriage. No evidence is offered by the employer or by the State Insurance Fund carrier as to a marriage, common-law or otherwise, between claimant and Hughes.

Proof of cohabitation, acknowledgment by the parties, and even a general reputation that they were man and wife, does not effect a common-law marriage. It is evidence from which an inference may be drawn, if it is not controverted. Here it is controverted by each of the parties. (*Gall* v. *Gall,* 114 N. Y. 109; *Chamberlain* v. *Chamberlain,* 71 N. Y. 423; *Betsinger* v. *Chapman,* 88 N. Y. 487.) In *Boyd* v. *Boyd* (252 N. Y. 422) a common-law marriage was found by a divided Court of Appeals, but there was proof of a signed written agreement, and the giving of a wedding ring by the man to the woman. Here each party asserts that the relation was meretricious. A common-law marriage may be established by circumstantial evidence if

it sustains an inference that legally competent persons express to each other an intent to become husband and wife and thereafter live and cohabit as such. (*Matter of Haffner,* 254 N. Y. 238.) The necessary element of a mutual agreement is lacking here.

The decision should be reversed and the matter remitted to the Workmen's Compensation Board for an award.

BREWSTER, J. (concurring). Claimant's proof of her ceremonial marriage to the deceased and her uncontradicted evidence of their long period of cohabitation thereunder raised a presumption of the validity of that marriage. (*Palmer* v. *Palmer,* 162 N. Y. 130; *Chamberlain* v. *Chamberlain,* 71 N. Y. 423; *Clayton* v. *Wardell,* 4 N. Y. 230; *Smith* v. *Smith,* 194 App. Div. 543.) Such was a presumption of law in that it arose by operation of " a rule which requires that a particular inference must be drawn from an ascertained state of facts." (*Platt* v. *Elias,* 186 N. Y. 374, 379; 22 C. J., Evidence, § 25.) This presumption the Board has found rebutted by what is sometimes termed a " presumption of fact," i.e., one founded upon an inference of the existence and continuance of a prior common-law marriage between claimant and one Hughes, drawn as a debatable matter of fact, from circumstantial evidence. (*Platt* v. *Elias, supra.*)

If the whole and only issue was as to claimant's status with respect to a common-law marriage relation I think it might be said that the inference the Board drew is sustained by evidence. This, notwithstanding (a) the parties' express denials of the *sine qua non* of its constitution, viz.: That they ever consented to such a relationship, and (b) the presumption that their relations, illicit at inception, continued to be meretricious during the relatively short, distant and intermittent periods of their cohabitation. (*Badger* v. *Badger,* 88 N. Y. 546, 553.) But however that may be, I think it must be held that any *permitted* inference is so ineffectual to overthrow the presumption of the validity of claimant's ceremonial marriage as, in law, under all the evidence presented, to be no evidence to sustain the finding of the common-law marriage. (*Matter of Meehan,* 150 App. Div. 681; 35 Am. Jur., Marriage, §§ 195, 199.) While a presumption of law can be overthrown by a debatable inference of fact to the contrary drawn from circumstantial evidence, the proof necessary to such a conclusion must consist of " evidence instead of presumptions " (*Matter of Meehan, supra,* 684), and be of such a quality in convincing power as utterly to negative the prem-

ise the law establishes. Here we may affirm every fact shown in connection with claimant's former cohabitation with Hughes and find it consistent with the presumption of a continuance of its illicit origin. While the Board's decision on the facts which have evidentiary support is conclusive, still we are to determine whether it was arrived at in accordance with applicable rules of law. The decision should be reversed and the matter remitted for decision anew upon the same or further evidence.

HEFFERNAN, J. (dissenting). On January 1, 1941, Edward Dondero, the deceased employee, sustained accidental injuries arising out of and in the course of his employment which resulted in his death the same day.

Claimant, alleging that she is the lawful widow of deceased, is seeking to obtain the benefits provided by the Workmen's Compensation Law.

At the first hearing before the referee claimant testified, and it is not disputed, that she entered into a ceremonial marriage with Dondero on April 18, 1929, and that there was no issue of such marriage. She also testified that this was her first marriage and that it had never been dissolved. Claimant also testified that she was the mother of two children — Edward Joseph Hughes born on July 31, 1924, and William Hughes born on October 19, 1925 — of which children Edward Hughes is admittedly the father. The child William died shortly after his birth and the child Edward died on September 7, 1933.

At the hearings before the referee respondents contended that claimant was the common-law wife of Edward Hughes at the time she entered into the ceremonial marriage with Dondero, that the common-law marriage had never been dissolved and that consequently the ceremonial marriage was null and void.

At the conclusion of the testimony the referee ruled in claimant's favor and held that there was no common-law marriage between her and Hughes and that the ceremonial marriage was valid.

Upon application of respondent insurance carrier, the Industrial Board reversed the decision of the referee and denied compensation to claimant on the ground that at the time of the ceremonial marriage claimant was the common-law wife of Edward Hughes. From that determination claimant has come to this court.

A common-law marriage may be briefly described as a marriage without formal solemnization. It is sometimes termed a

"consensual" marriage or a marriage "in fact." (38 C. J., Marriage, § 88.)

A nonceremonial marriage is not required to be proven in any particular manner. Like any other fact it may be shown by direct or circumstantial evidence. (*Matter of Haffner,* 254 N. Y. 238; *Gall* v. *Gall,* 114 N. Y. 109; *Matter of Hamilton,* 76 Hun 200, 207; *Clayton* v. *Wardell,* 4 N. Y. 230; *Van Tuyl* v. *Van Tuyl,* 57 Barb. 235; *Dietrich* v. *Dietrich,* 128 App. Div. 564, 567.)

Hearsay and traditional evidence, as well as an admission of a party, is competent to prove a marriage when such evidence is the best the nature of the case will afford. (*Chamberlain* v. *Chamberlain,* 71 N. Y. 423; *People* v. *Portman,* 159 App. Div. 702; *Christy* v. *Clarke,* 45 Barb. 529.)

We are not unmindful of the rule of law that cohabitation between the parties and a mutual acknowledgment on their part that they are husband and wife, coupled with a general reputation that they sustain such relation to each other, do not in and of themselves, constitute a marriage; all this is simply evidence which, if strong enough and not successfully controverted, raises a presumption that the parties are husband and wife, and justifies the trier of the facts in finding that such is the fact. (*Matter of Brush,* 25 App. Div. 610; *Gall* v. *Gall, supra; Chamberlain* v. *Chamberlain, supra.*)

In *Gall* v. *Gall* (*supra*) Judge VANN, speaking for the Court of Appeals, said: "The cohabitation, apparently decent and orderly, of two persons opposite in sex, raises a presumption of more or less strength that they have been duly married. While such cohabitation does not constitute marriage, it tends to prove that a marriage contract has been entered into by the parties. Where, however, the cohabitation is illicit in its origin, the presumption is that it so continues until a change in its character is shown by acts and circumstances strongly indicating that the connection has become matrimonial. It is sufficient if the acts and declarations of the parties, their reputation as married people and the circumstances surrounding them in their daily lives, naturally lead to the conclusion that, although they began to live together as man and mistress, they finally agreed to live together as husband and wife."

The mere fact that the parties have cohabited together is not sufficient to prove such a marriage. The cohabitation must be matrimonial and not illicit. The promise and bona fide intention to take each other for husband and wife, and to enter into the bonds of matrimony until one or the other dies, must be reciprocal, or else there can be no valid marriage. Like any other

contract which requires for its validity the full and free consent of both parties, there can be no marriage, ceremonial or nonceremonial, without the mutual acquiescence of both the man and the woman. (*di Lorenzo* v. *di Lorenzo*, 174 N. Y. 467; *Graham* v. *Graham*, 211 App. Div. 580, 583.) In *Dodge* v. *Campbell* (135 Misc. 644, affd. 229 App. Div. 534) Mr. Justice Foster, then sitting at Special Term, in discussing the essentials necessary to constitute a valid common-law marriage, said *inter alia:* " Any mutual agreement between a man and woman to be husband and wife *in præsenti,* followed by cohabitation, constitutes a valid and binding marriage. An actual marriage may be presumed from matrimonial cohabitation and acknowledgments of the parties. A mere formal contract is not the essential thing. Marriage is a status which may be established by the words, actions and lives of the parties, evidencing their understanding and intent. The general definition of matrimonial cohabitation is the living together of man and woman ostensibly as husband and wife.''

Applying these principles to the evidence at hand we think the Industrial Board was justified in finding that a common-law marriage existed between claimant and Hughes. A brief resumé of the proof will, we think, sustain that conclusion.

Claimant testified that she and Hughes began living together in 1923 and continued to do so for three years during which time the children referred to were born. They lived on Pearl Street and later on East Broadway in the city of New York. She also testified that while living in the localities mentioned she held herself out as the wife of Hughes and the latter also held himself out as her husband. They were regarded and treated as husband and wife by the people in the neighborhood.

The physician who attended claimant when her children were born identified his signature on the birth certificates and said that the information contained in those documents was procured from the mother. He said that if he had information that claimant and Hughes were not husband and wife he would have written on the certificates the initials " O. W. " meaning born out of wedlock. Hughes testified that he paid the physician's charges in connection with the birth of the children and that he supported and maintained them while the parties lived together.

The proof also discloses that the children were baptized in St. Theresa's Roman Catholic Church; that claimant and Hughes indicated to the officiating clergyman that the children were their lawful offspring, and that these ceremonies were attended by the brothers and sisters of the parents.

The record also shows that while claimant and Hughes lived together on two occasions she filed a complaint against him in the Magistrate's Court in which complaints she alleged that Hughes was her husband and that she was his common-law wife.

It also appears that while the couple were living together Hughes registered with the board of elections for the purpose of voting for the years 1924–1927 inclusive and in each instance he stated that he was married.

As against this evidence we have only the testimony of claimant and Hughes. Both swore unequivocally that the relationship existing between them was wholly meretricious and that they never agreed to become husband and wife.

The question presented for decision is one of fact and not of law. There is evidence which supports the finding of the Industrial Board. The decision of the board is final on questions of fact (Workmen's Compensation Law, § 20). In order to reverse the finding of the board we would have to hold that no question of fact is involved. In view of the proof in the record we may not do that.

In seeking a reversal claimant is relying on *Graham* v. *Graham* (211 App. Div. 580). That case is distinguishable. In that case the Special Term of the Supreme Court held that defendant was the common-law wife of one Behrens. The Appellate Division reversed the judgment as against the weight of the evidence. No children were involved in the *Graham* case. Our power to review the facts on appeal in any ordinary civil action is very comprehensive. We are invested with no such authority in workmen's compensation cases.

To accept the story of claimant and Hughes as against the contrary evidence in the record and thereby permit them to stigmatize their children as illegitimate in order that claimant may capitalize on Dondero's death is revolting to our sense of decency and good morals.

The decision of the Industrial Board should be affirmed, but without costs.

Brewster and Foster, JJ., concur with Hill, P. J., Brewster, J., in a separate memorandum; Heffernan, J., dissents in an opinion in which Lawrence, J., concurs.

Decision reversed and matter remitted to the Workmen's Compensation Board for an award of death benefits to Helen C. Dondero as the widow of Edward Dondero, deceased. Either party may introduce additional proof at the hearing if they are so advised. [See amended decision *post,* p. 866.]